UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SUFFOLK CONSTRUCTION CO., INC.,
a Massachusetts Corporation and BAKER
CONCRETE CONSTRUCTION, INC., an         CASE NO:
Ohio Corporation

      Plaintiffs,
vs.

RODRIGUEZ AND QUIROGA
ARCHITECTS CHARTERED, a Florida
Corporation, FRAGA ENGINEERS, LLC., a
Florida Limited Liability Company

      Defendants.
_____/

## COMPLAINT

Plaintiffs, SUFFOLK CONSTRUCTION COMPANY, INC., a Massachusetts corporation ("Suffolk") and BAKER CONCRETE CONSTRUCTION, INC., an Ohio Corporation ("Baker") (collectively, "Plaintiffs"), sue Defendants, RODRIGUEZ AND QUIROGA ARCHITECTS CHARTERED, a Florida corporation ("R&Q") and FRAGA ENGINEERS, LLC, a Florida limited liability company ("Fraga")(collectivey, "Defendants") and state:

## PARTIES

1. Suffolk is a properly licensed Massachusetts corporation, with its principal place of business in Boston, Massachusetts. Suffolk has fulfilled all prerequisites and conditions precedent to maintain this cause of action or said prerequisites and conditions have been waived.

2. Baker is a properly licensed Ohio corporation authorized to conduct business within the State of Florida, with its principal place of business in Monroe, Ohio. Baker has

fulfilled all prerequisites and conditions precedent to maintain this cause of action or said prerequisites and conditions have been waived.

3. R&Q is a Florida corporation authorized to conduct business within the State of Florida with its principal place of business in Miami-Dade County, Florida.

4. Defendant Fraga is a Florida limited liability company authorized to conduct business within the State of Florida with its principal place of business in Miami-Dade County, Florida.

## JURISDICTION

5. This Court has jurisdiction under 28 U.S.C. §1332(a)(1). The Plaintiffs and the Defendants are citizens of different states. In addition the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest, costs and attorneys' fees.

## VENUE

6. Venue is proper in this District under 28 U.S.C. §1391 as: (a) the causes of action alleged herein arose in this District; (b) the property which forms the subject matter of this Action is located in this District; (c) the construction work performed by Suffolk and Baker, which is the subject of this litigation, was performed at the Miami Science Museum in this District; and (d) the tortious acts committed by R&Q and Fraga occurred in this District.

7. All conditions precedent to bringing the instant action have been performed to the extent not otherwise waived or excused.

## GENERAL ALLEGATIONS

8. This Action arises out of and relates to the design and construction of a new science museum located in Museum Park in Miami, Florida (the "Project").

9. On or about July 1, 2009, the Museum of Science, Inc., d/b/a the Patricia and Phillip Frost Museum of Science ("MSM"), as Owner of the Project, and R&Q, as the Executive

Architect, entered into an agreement for architectural and engineering services (the "R&Q Contract") whereby R&Q would serve as the Executive Architect/Architect of Record for the Project.  A copy of the R&Q Contract is attached hereto as **Exhibit A.**

10. Subsequently, R&Q entered into an agreement with Fraga (the "Fraga Contract") pursuant to which Fraga agreed to perform certain design and engineering services with respect to the mechanical, electrical and plumbing ("MEP") systems at the Project, as well as to provide design and engineering services with respect to the Project's fire protection and security systems.  A copy of the Fraga Contract is attached hereto as **Exhibit B.**

11. R&Q and Fraga were required to, *inter alia*: (a) provide 100% full and complete Construction Documents (collectively the "Construction Documents"); (b) timely respond to Requests for Information ("RFIs") and submittals; (c) timely resolve design coordination issues; (d) provide full and complete design and contract administration services to MSM; and (e) to otherwise properly manage the design of the Project.

12. On or about March 30, 2012, Suffolk and MSM entered into a Construction Services Agreement together with a set of General Conditions (together, the "Suffolk Contract") for the construction of the Project (the "Work").  A copy of the Suffolk Contract is attached hereto as **Exhibit C.**

13. The Suffolk Contract recited various responsibilities that were undertaken by R&Q and, in turn, Fraga, under the R&Q Contract.  More specifically R&Q (and Fraga, as applicable):

   a. was to prepare Construction Documents that included Drawings, Specifications, Project Manuals and other items necessary and in such detail as R&Q determined are necessary and suitable for Suffolk to complete the Work.  Suffolk, in turn was directed under the Suffolk Contract to use such Drawings, Specifications, Project Manuals and other items for the sole purpose of completing the Work;
   b. had the power to order Suffolk to remove any defective or non-conforming Work;

3

     c. was to periodically observe the progress and quality of the Work to determine that the Work performed by Suffolk was being performed in accordance with the Contract Documents;

     d. was to review, approve or take other appropriate action with respect to all Shop Drawings, Samples and Product Data (defined as "Submittals") submitted by Suffolk in connection with the work required of Suffolk under the Suffolk Contract. Suffolk was not permitted to perform any work covered by a Submittal until R&Q had reviewed and approved the Submittal;

     e. was required to promptly interpret and, as necessary, clarify Drawings and Specifications and prepare and issue supplemental Drawings and Specifications when requested to do so by the Owner;

     f. was to report to the Owner monthly on the progress of the Work and was to review all requests by Suffolk for progress payments and advise the Owner if the requested payment is consistent with the progress of the Work; and

     g. was to review Work and advise whether or not such Work has been completed in accordance with the Contract Documents.

14. Suffolk, as construction manager, and Baker, as subcontractor, entered into certain agreements pursuant to which Baker performed certain concrete-related work at the Project ("Baker Agreements").

15. R&Q, and Fraga caused significant delays and impacts to the Work at the Project due to numerous deficiencies, errors and omissions in the design documents and specifications.

16. In fact, the design documents issued by R&Q, and Fraga that were intended to be 100% Construction Documents contained numerous design errors, omissions and conflicts.

17. Thereafter, R&Q, and Fraga revised their design documents through a series of Addenda which also contained numerous design errors, omissions and conflicts. In fact, many design changes were made through improper means such as modifications of design made to shop drawings and submittals without proper supporting design documentation.

18. R&Q and Fraga failed to timely or properly remedy these deficiencies, errors and omissions, and R&Q and Fraga also failed to properly manage the design process, and failed to timely review submissions.

19. R&Q and Fraga are liable for these deficiencies, errors, omissions, and other failures.

20. As a direct result of R&Q's and Fraga's deficiencies, errors, omissions, and other failures, Suffolk and Baker have suffered damages, including but not limited to additional Project-related costs.

**COUNT I – NEGLIGENCE**
**(As to R&Q)**

21. Suffolk and Baker repeat and reallege the statements and allegations contained in paragraphs 1 through 20 as though fully set forth herein.

22. This is a claim for negligence by Suffolk and Baker against R&Q.

23. Suffolk and Baker were to perform their work in accordance with the design documents and specifications specifically prepared by R&Q.

24. Pursuant to the R&Q Contract, R&Q was to:

   a. provide complete and full service architectural engineering design services sufficient to meet all applicable codes and regulations for purposes of permitting and construction;
   b. prepare and provide the Owner detailed requirements for construction of the Project which included drawings and specifications that establish in detail the quality levels and performance criteria of the materials and systems required for the Project;
   c. meet with the Owner, the Design Architect and Suffolk promptly after the award of the Construction Contract [Suffolk Contract] for purposes of reviewing design intent, interpreting drawings, reviewing Suffolk's understanding of the Project, and establishing procedures for Contract Administration Services communication; and
   d. respond to Suffolk's requests for information, clarification or interpretation.

25. As Executive Architect on the Project, R&Q had a duty to provide design and engineering services in accordance with the standard of care used by similar design professionals in the same locale under similar circumstances.

5

26. R&Q submitted the design documents and specifications for Suffolk and Baker's benefit, guidance and use to construct the Project with full knowledge that Suffolk and Baker would rely upon the information furnished to them in order to perform their obligations under the Suffolk Contract and Baker Agreements, respectively.

27. R&Q was, amongst other things, responsible for observing, rejecting and/or supervising Suffolk and Baker's work. If said work was rejected by R&Q, Suffolk and/or Baker was required to repair or replace said work prior to receiving payment from the Owner.

28. R&Q's duties to Suffolk and Baker on the Project included, among other things: (a) providing complete and full architectural and engineering services; (b) timely preparing Construction Documents, including drawings and specifications; (c) participating in a constructability review; (d) providing contract administration services; (e) timely reviewing and responding to RFIs and submittals; (f) issuing supplemental and revised drawings in a timely manner; (g) providing full-time, on-site construction administration; (h) timely coordinating the design of the civil engineering, structural, mechanical and electrical systems; (i) timely reviewing and resolving change order requests; (j) resolving design conflicts in a timely manner; and (k) otherwise properly managing the design process.

29. R&Q breached its duty to Suffolk and Baker and breached the applicable standard of care by providing a design for the Project that was deficient, incomplete and subject to multiple wholesale revisions.

30. R&Q also breached its duty to Suffolk and Baker and the applicable standard of care by failing to resolve design conflicts in a timely manner and by failing to properly manage the design process.

31. Other R&Q breaches include, but are not limited to:

- R&Q failed to provide for penetrations by major MEP systems in its design of the walls known as "W-Walls" (or "Fin Walls").

- R&Q failed to properly design the Gulf Stream Tank ("GST") sump system.

- R&Q failed to dimensionally coordinate the concrete structure surrounding the GST with the exterior façade.

- R&Q failed to properly coordinate the gray water system receiver tank and the gravity lines feeding it.

- R&Q failed to properly coordinate the dimensioned edge-of-slab drawings with the Glazed Masonry Units.

- R&Q failed to properly coordinate the plumbing floor box locations on level 3 of the Museum's "Living Core" with the structural drawings.

- R&Q revised the cistern tanks, delaying the completion of the garage and the area beneath the GST and the slab on the level above the cistern tanks; and

- In general, R&Q failed to coordinate the structure and the MEP systems.

32. As a direct and foreseeable result of R&Q's negligent acts, errors and/or omissions, Suffolk and Baker have suffered damages, exclusive of interest, costs and attorney's fees.

**WHEREFORE**, Plaintiffs, SUFFOLK CONSTRUCTION COMPANY, INC. and BAKER CONCRETE CONSTRUCTION, INC., respectfully request that this Honorable Court enter a judgment against Defendant RODRIGUEZ AND QUIROGA ARCHITECTS CHARTERED, awarding Suffolk and Baker actual and consequential damages, prejudgment interest, costs and expenses together with such other and further relief as this Honorable Court deems just, equitable, and proper.

### COUNT II – NEGLIGENCE
### (As to Fraga)

33. Suffolk and Baker repeat and reallege the statements and allegations contained in paragraphs 1 through 20 and 24-29 as though fully set forth herein.

34. This is a claim for negligence by Suffolk and Baker against Fraga.

35. Suffolk and Baker were to perform its work in accordance with the MEP and other design documents and specifications specifically prepared by Fraga.

36. As MEP Engineer, Fraga had a duty to provide design and engineering services in accordance with the standard of care used by similar design professionals in the same locale under similar circumstances.

37. Fraga submitted MEP and other design documents and specifications for Suffolk and Baker's benefit, guidance and use to construct the Project with full knowledge that Suffolk and Baker would rely upon the information furnished to them in order to perform their obligations under the Suffolk Contract and Baker Agreements, respectively.

38. Fraga was, amongst other things, responsible for observing, rejecting and/or supervising Suffolk's work. By way of example only, Fraga's review and approval was a condition precedent to Suffolk being paid for work performed and Fraga was required to review and confirm that work performed by Suffolk and its downstream trades was completed in accordance with the design documents prepared by Fraga. If said work was rejected by Fraga, Suffolk was required to repair or replace said work prior to receiving payment from the Owner.

39. Fraga's duties to Suffolk and Baker on the Project included, among other things: (a) timely providing complete and full MEP and other engineering services; (b) timely preparing MEP and other drawings and specifications; (c) participating in a constructability review; (d) timely providing contract administration services; (e) timely reviewing and responding to RFI's and submittals; (f) timely issuing supplemental and revised drawings; (g) providing full-time, on-site construction administration; (h) timely coordinating the design of the MEP and other systems; (i) timely reviewing and resolving change order requests; and (j) timely resolving MEP and other design conflicts.

40. Fraga breached its duty to Suffolk and Baker and breached the applicable standard of care by providing a design for the MEP and other systems of the Project that were deficient, incomplete and subject to multiple wholesale revisions.

41. Fraga also breached its duty to Suffolk and Baker and the applicable standard of care by failing to resolve design conflicts in a timely manner and by failing to properly manage the design process.

42. Other Fraga breaches include, but are not limited to:

- Fraga failed to properly design the primary tanks.

- Fraga failed to properly coordinate the fire protection design.

- Fraga failed to properly coordinate the Living Core mechanical room design.

- Fraga failed to properly design and/or coordinate the GST ring beam MEP penetrations.

- The ceiling height in the Board Room required several revisions.

- Fraga failed to provide adequate MEP coordination information concerning the garage work.

- Fraga caused or contributed to design and submittal issues associated with CRAC units, Air Handler Units, cooling towers, chillers, fractionators, LSS pumps, and the water treatment system.

- Fraga failed to provide a design for the Air Handing Unit in the Living Core that could fit in the space provided by the structural and architectural plans.

- Fraga failed to properly coordinate the Living Core steel columns (examples include deficient coordination with MEP, uncoordinated access for rough-in, deficient coordination with fabric roof embeds, deficient coordination with stud rails, etc.).

- Fraga's initial design deficiencies caused Fraga to revise and redesign the FPL vault, impacting the progress of the work.

- Fraga's initial design deficiencies caused Fraga to redesign the generator room, impacting the progress of the work.

- Fraga failed to properly design the electrical feeders.

- Fraga failed to properly coordinate the specifications and drawings for the fuel tank.

- Fraga failed to properly coordinate the 3rd floor Living Core beam penetrations.

- Fraga was responsible for, and failed to timely resolve, a conflict concerning the amount of space to be provided above the People & Science ceiling (30" vs. 28"); and

- Fraga failed to properly coordinate the design of the electrical feeds to the North Level 5 East electric room (lack of space for the conduit).

43. As a direct and foreseeable result of Fraga's negligent acts, errors and/or omissions, Suffolk and Baker have suffered damages, exclusive of interest, costs and attorney's fees.

**WHEREFORE**, Plaintiffs, SUFFOLK CONSTRUCTION COMPANY, INC. and BAKER CONCRETE CONSTRUCTION, INC., respectfully request that this Honorable Court enter a judgment against Defendant FRAGA ENGINEERS, LLC, awarding Suffolk and Baker actual and consequential damages, prejudgment interest, costs and expenses, together with such other and further relief as this Court deems just, equitable, and proper.

DATED:  September 8th, 2016.

Respectfully submitted,

/s/ Ben W. Subin
Ben W. Subin, Esq.
ben.subin@hklaw.com
Florida Bar No. 982776
Michael R. Candes
michael.candes@hklaw.com
Florida Bar No. 0589381
Holland & Knight, LLP
200 South Orange Avenue, Ste. 2600
Orlando, FL 32801
Telephone: 407.425.8500
Facsimile: 407.244.5288
*Attorneys for Suffolk Construction Co., Inc.*

PECKAR & ABRAMSON, P.C.
One Southeast Third Avenue, Suite 3100
Miami, Florida 33131
Telephone: (305) 358-2600
Facsimile: (305) 375-0328

By: **/s/ Melinda S. Gentile**_____
Melinda S. Gentile, Esq.
Florida Bar No. 477966
mgentile@pecklaw.com
Monique S. Cardenas, Esq.
Florida Bar No. 38076
mcardenas@pecklaw.com
*Counsel for Baker Construction Company, Inc.*