**SUFFOLK CONSTRUCTION CO., INC.,**
**et al.,**

    Plaintiffs,

v.

**RODRIGUEZ AND QUIROGA**
**ARCHITECTS CHARTERED, et al.,**

    Defendants.

_____/

## **OMNIBUS ORDER**

**THIS CAUSE** came before the Court upon Fraga Engineers, LLC's Motion to Dismiss Second Amended Complaint or, in the Alternative, for a More Definite Statement [ECF No. 73]; Grimshaw Architects, P.C.'s Motion to Dismiss Plaintiffs' 2nd Amended Complaint [ECF No. 74]; DDA Engineers, PA's Motion to Dismiss Second Amended Complaint or, in the Alternative, for a More Definite Statement [ECF No. 76]; Suffolk Construction Company's Motion to Dismiss Rodriguez and Quiroga Architects Chartered's Counterclaim, or in the Alternative, Motion to Compel Arbitration [ECF No. 116]; Plaintiff Baker Concrete Construction, Inc.'s Motion to Dismiss Count II of Rodriguez and Quiroga Architects Chartered's Counterclaim [ECF No. 117]; Rodriguez and Quiroga Architects Chartered's Motion for Entry of an Order Finding that Rodriguez and Quiroga Architects Chartered is an Intended Third-Party Beneficiary of the Contract [ECF No. 135]; and Rodriguez and Quiroga Architects Chartered's Motion for Entry of an Order Finding that Rodriguez and Quiroga Architects Chartered is an Intended Third-Party Beneficiary of the Contract [ECF No. 136]. The Court has

reviewed the Motions and the record, heard argument of counsel at the hearing on February 8, 2018, and is otherwise fully advised.

## FACTUAL BACKGROUND

This action relates to the design and construction of a science museum in Miami, Florida (the "Project").

### I. Architecture and Design Contracts

On July 1, 2009, the Museum of Science, Inc. ("MSM") entered into an agreement with Defendant Rodriguez and Quiroga Architects Chartered ("R&Q") for architectural and engineering services (the "R&Q Contract"). Pursuant to the R&Q Contract, R&Q was to serve as the Executive Architect for the Project. On August 21, 2009, MSM entered into an agreement with Defendant Grimshaw Architects P.C. ("Grimshaw") (the "Grimshaw Contract"), whereby Grimshaw was to serve as the Design Architect for the Project.

As with most large-scale construction projects, R&Q, as the Executive Architect, subcontracted with other professionals to complete the architectural and engineering plans. R&Q contracted with Defendant Fraga Engineers, LLC ("Fraga") to perform design and engineering services with respect to the mechanical, electrical, and plumbing systems for the Project (the "Fraga Contract"). R&Q also contracted with Defendant DDA Engineers, P.A. ("DDA") to perform structural design and engineering services for the Project (the "DDA Contract").

### II. Construction Contracts

On March 30, 2012, MSM entered into a construction services agreement with Plaintiff Suffolk Construction Co., Inc. ("Suffolk") for the construction of the Project (the "Suffolk Contract"). The Suffolk Contract incorporates a set of General Conditions and specifically

references Grimshaw as the Design Architect and R&Q as the Executive Architect for the Project. The Suffolk Contract names the City of Miami (the "City") and Miami-Dade County (the "County) as third-party beneficiaries. To complete the construction of the Project, Suffolk entered into several agreements with Plaintiff Baker Concrete Construction, Inc. ("Baker") (the "Baker Agreements").

On May 14, 2014, MSM terminated the Suffolk Contract for convenience. MSM then entered into a direct contract with Baker (the "Transition Agreement") whereby Baker acted as a direct contractor for the concrete-related work at the Project. MSM ultimately hired Skanska USA Building, Inc., to complete the remainder of the Project.

**III.　Litigation**

Suffolk and Baker contend that the design documents created by R&Q, Grimshaw, Fraga, and DDA (collectively, the "Defendants") were flawed, causing increased costs and delays in the Project. As a result, Suffolk and Baker (collectively, the "Plaintiffs") filed this negligence action against the Defendants for their economic losses. The operative complaint is now the Second Amended Complaint (the "SAC") [ECF No. 71]. Grimshaw, Fraga, and DDA moved to dismiss, arguing that Plaintiffs fail to adequately allege that Grimshaw, Fraga, or DDA owed a legal duty to Plaintiffs. R&Q answered the SAC and filed counterclaims against Plaintiffs, arguing that it was an intended third-party beneficiary of the Suffolk Contract and one or more of the Baker Agreements. Both Suffolk and Baker moved to dismiss the counterclaims arguing that R&Q is not an intended third-party beneficiary of the contract.[1]

---

[1]　Suffolk and Baker both argued in the alternative that if the Court finds R&Q to be a third-party beneficiary of the agreements, R&Q should be compelled to proceed on its claims in arbitration.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.  Duty**

Plaintiffs set forth claims for negligence against each of the Defendants, arguing that Defendants breached their duties to Plaintiffs by providing deficient architectural, design, or

engineering plans for the Project. To state a claim for negligence under Florida law, a plaintiff must allege: (1) a legal duty requiring the defendant to protect others from unreasonable risks, (2) breach of that duty, (3) a causal connection between the defendant's conduct and the injury, and (4) damages. *See Williams v. Davis*, 974 So. 2d 1052, 1057 (Fla. 2007); *Moransais v. Heathman*, 744 So. 2d 973, 975 n.3 (Fla. 1999). While R&Q, the Executive Architect, has answered the SAC, Grimshaw, Fraga, and DDA have all moved to dismiss, arguing that they had no supervisory role or control over Suffolk or Baker, and that, therefore, they owed Suffolk and Baker no duty.

In Florida, legal duties typically arise from: "(1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Williams*, 974 So. 2d at 1057 (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)). The duty alleged in this action falls under the last category – one which "encompasses that class of cases in which the duty arises because of a forseeable zone of risk arising from the acts of the defendant." *McCain*, 593 So. 2d at 503 n.2. "[T]he defendant's conduct must create or control the risk before liability may be imposed . . . . Therefore, the foreseeable zone of risk created by the defendant's conduct defines the scope of the defendant's legal duty." *BRE/Cocoa Beach Owner, LLC v. Rolyn Cos., Inc.,* No. 6:12-cv-466-Orl-22GJK, 2013 WL 12158597, *2 (M.D. Fla. Mar. 13, 2013) (internal citations and quotations omitted). Because a legal duty "is owed by a particular defendant to a particular plaintiff based on particular circumstances," the foreseeability analysis is fact specific. *Id.* at *2 (quoting *Smith v. Fla. Power & Light Co.,* 857 So. 2d 224, 229 (Fla. 2d DCA 2003)).

5

In *A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397 (Fla. 1973), the Florida Supreme Court held that a supervising architect owed a duty to a general contractor despite a lack of privity between the architect and general contractor. In reaching this case-specific conclusion, the Court balanced various factors, including "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Id.* at 401 (quoting *United States v. Rogers & Rogers*, 161 F. Supp. 132 (S.D. Cal. 1958)). The Court determined that, as a matter of policy, supervising architects simply have too much control over a contractor not to owe the contractor a legal duty and, therefore, "a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity." *Id.* at 402. Accordingly, the Florida Supreme Court held that an architect's level of control over a contractor and the foreseeability of injury determines whether the architect owes a professional duty to the contractor. *Id.* ("The theory that the legal responsibility of the architect should be commensurate with his control of the construction project has resulted in expansion of liability to third parties.") (internal quotations and citations omitted).

In 1993, the Florida Supreme Court limited its ruling in *Moyer* "strictly to its facts." *Casa Clara Condo. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 n 9 (Fla. 1993).[2] However, the cases that have followed *Moyer* and *Casa Clara* still require, in the absence of

---

[2] The ruling in *Casa Clara* - dealing with the application of the economic loss doctrine - was extremely limited by the Florida Supreme Court's decision in *Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013).

6

privity, that a professional architect or engineer have some level of control over a third-party contractor for a duty to arise. *See University Cmty. Hosp. v. Prof. Serv. Indus.*, No. 8:15-cv-628-T-27EAJ, 2017 WL 740998, at *3 (M.D. Fla. Feb. 24, 2017) (finding that it was not foreseeable that the plaintiff, an engineering firm, could be harmed by the defendant, a construction subcontractor, when the defendant "had no economic, supervisory, or other control over [the plaintiff]"); *Posen Constr., Inc. v. Lee County*, 921 F. Supp. 2d 1350, 1364 (M.D. Fla. 2013) ("The common theme in [cases finding a duty] is the presence of a supervisory role or element of control by the architect and engineer."); *Recreational Design & Const., Inc. v. Wiss, Janney, Elstner Assoc., Inc.*, 820 F. Supp. 2d 1293, 1299 (S.D. Fla. 2011) (finding dismissal warranted where no allegation that defendants had decision making authority over the plaintiff). Control is often manifested in the architect or engineer's knowledge that a third party will use its designs, plans or reports. *See Porto Venezia Condo. Assoc., Inc. v. WB Fort Lauderdale, LLC*, No. 11-60665-CIV, 2012 WL 7635207 at *6 (S.D. Fla. Aug. 22, 2012) (holding that where professional engineers knew their calculations, reports, and opinions would be provided to a developer who would rely upon their work, it was foreseeable that the developer would be injured if engineer acted negligently); *Moransais*, 744 So. 2d at 979 (holding that plaintiff could maintain a negligence action against engineers, in the absence of privity, because the engineers were "responsible for performing professional services to a client of their company whom they reasonably knew or should have known would be injured if they were negligent in the performance of those services"); *Hewitt-Kier Const. v. Lemuel Ramos & Assoc.,* 775 So. 2d 373, 375 (Fla. 4th DCA 2000) (finding that architect could be liable in negligence where it prepared erroneous design documents with the knowledge that its client would supply them to a contractor who would be injured if the designs were inadequate).

The Court finds, therefore, that in the absence of privity, an architect must have some control over a contractor or a project for a duty to be imposed. A determination of control will be based on the facts of the case. Control may be established, as in *Moyer*, where the architect or engineer has a supervisory role.[3] However, control may also be established, as in *Porto Venezia, Moransais,* and *Hewitt,* where the architect or engineer acts with the knowledge that the plaintiff will rely on its designs or plans. *See Porto Venezia*, 2012 WL 7635207 at *6; *Moransais*, 744, So. 2d at 979; *Hewitt-Kier*, 775 So. 2d at 375; *cf. Recreational Design,* 820 F. Supp. 2d at 1299 (finding no duty where the defendant did not prepare engineering reports until *after* the injured plaintiff had completed the project – thus indicating a lack of control or supervision) (emphasis added). By exerting control over a contractor or a project, either by virtue of its supervisory role or its knowledge that the contractor will rely on its plans, the architect or engineer places the contractor within the forseeable zone of risk such that a duty may be imposed.

Here, the SAC alleges that each of the Defendants exerted control over Suffolk and Baker by virtue of Defendants' supervisory roles and/or preparation of plans on which Suffolk and Baker relied:

- R&Q was, amongst other things, responsible for observing, rejecting and/or supervising Suffolk and Baker's work. (SAC ¶ 47).

- Fraga submitted MEP and other design documents and specifications for Suffolk and Baker's benefit, guidance and use to construct the Project with full knowledge that Suffolk and Baker would rely upon the information furnished to them in order to perform their obligations under the Suffolk Contract, Baker

---

[3] The Court is mindful of the fact that many of these cases were intertwined with discussions of whether the economic loss doctrine prohibited claims for purely economic damages that sounded in negligence. It is undisputed that the Florida Supreme Court has now held that the economic loss doctrine only applies in the products liability context. *See Tiara*, 110 So. 3d at 407. The erosion of the economic loss doctrine does not change the Court's analysis for the facts of this case.

- Agreements, Transition Agreement and the Baker/Skanska Subcontract, respectively. (SAC ¶ 57).

- Fraga was, amongst other things, responsible for observing, rejecting and/or supervising Suffolk's work. By way of example only, Fraga's review and approval was a condition precedent to Suffolk being paid for work performed and Fraga was required to review and confirm that work performed by Suffolk and Baker and its downstream trades was completed in accordance with the design documents prepared by Fraga. If said work was rejected by Fraga, Suffolk and/or Baker was required to repair or replace said work prior to receiving payment from the Owner. (SAC ¶ 58).

- DDA submitted structural and other design documents and specifications for Suffolk and Baker's benefit, guidance and use to construct the Project with full knowledge that Suffolk and Baker would rely upon the information furnished to them in order to perform their obligations under the Suffolk Contract, Baker Agreements, Transition Agreement and the Baker/Skanska Subcontract, respectively. (SAC ¶ 68).

- Upon information and belief, DDA was, amongst other things, responsible for observing, rejecting and/or supervising Suffolk and Baker's work. By way of example only, DDA's review and approval was a condition precedent to Suffolk being paid for work performed and DDA was required to review and confirm that work performed by Suffolk and Baker and its downstream trades was completed in accordance with the design documents prepared by DDA. If such work was rejected by DDA, Suffolk and/or Baker was required to repair or replace said work prior to receiving payment from the Owner. (SAC ¶ 69).

- Grimshaw was, amongst other things, responsible for observing, rejecting and/or supervising Suffolk and/or Baker's work. By way of example only, Grimshaw: (a) supervised and observed Baker's architectural concrete mock-ups; (b) supervised and observed the architectural concrete installed by Baker on the Project. If said work was rejected by Grimshaw, Suffolk and/or Baker was required to repair and/or replace said work prior to receiving payment from the Owner. (SAC ¶ 78)

- Grimshaw submitted the design documents and specifications for Suffolk, Baker and Suffolk's subcontractors' benefit, guidance and use to construct the Project with full knowledge that Suffolk, Baker and Suffolk's subcontractors would rely upon the information furnished to them in order to perform their obligations under the Suffolk Contract, Baker Agreements, Transition Agreement, Baker/Skanska Subcontracts and other subcontracts. (SAC ¶ 81).

The Court finds, at this stage of the litigation, that Plaintiffs have sufficiently alleged that each of the Defendants exerted control over Plaintiffs and the project such that Defendants owed

Plaintiffs a legal duty.[4] Plaintiffs allege that each of the Defendants knew that Plaintiffs would rely on their work. In addition, Plaintiffs allege, with specific examples, that Defendants were responsible for observing, rejecting, and/or supervising Plaintiffs' work. Of course, following discovery, if the facts show that Defendants had no level of control over the process, such that it was not foreseeable that Plaintiffs would be injured by Defendants' particular reports/plans/designs, then Plaintiffs' negligence claims will fail.

Fraga, DDA, and Grimshaw also argue that Baker's claims must be dismissed because Baker was a subcontractor. In *Spancrete, Inc. v. Ronald E. Frazier & Associates, P.A.*, 630 So. 2d 1197, 1198 (Fla. 3d DCA 1994), the Florida Third District Court of Appeal held that the duty of care recognized in *Moyer* does not extend to a subcontractor. However, Baker has alleged that at various points during the Project it assumed the role of general contractor. Accordingly, at this stage of the litigation, Baker has sufficiently alleged a claim for negligence against each of the Defendants.

## II. Third-Party Beneficiary Counterclaim

In its Counterclaim, R&Q brings breach of contract claims against Suffolk and Baker claiming it is an intended third-party beneficiary of the Suffolk Contract and one or more of the the Baker Agreements. "To state a valid claim for breach of a third-party beneficiary contract, a plaintiff is required to plead and prove: (1) the existence of a contract to which it was not a party; (2) an intent, either expressed by the parties or in the provisions of the contract, that the contract primarily and directly benefits the plaintiff; (3) breach of that contract; and (4) damages resulting

---

[4] Fraga, DDA, and Grimshaw contend that their respective contracts negate Plaintiffs' allegations that they had supervision or control over the project. The Court disagrees. While the contracts do not designate Fraga, DDA, or Grimshaw as supervisory architects, they do not negate the allegations that Fraga, DDA, and Grimshaw knew that Plaintiffs would rely upon the information in their reports and that the Defendants exerted some control over Plaintiffs' work performance.

from the breach." *Reliable Marine Towing & Salvage, LLC v. Thomas*, No. 2:17-cv-430-FtM-99CM, 2017 WL 6346187, at *2 (M.D. Fla. December 12, 2017). "Persons who merely receive an 'incidental or consequential benefit from the contract' cannot be third party beneficiaries." *Id.* (quoting *Esposito v. True Color Enters. Constr., Inc.,* 45 So. 3d 554, 555 (Fla. 4th DCA 2010)).

The Court finds that R&Q fails to adequately plead that it is an intended third-party beneficiary of the Suffolk Contract or any of the Baker Agreements. All of R&Q's allegations as to their purported third-party beneficiary status are conclusory. Further, the Suffolk Contract specifically designates the City of Miami and Miami-Dade County as third-party beneficiaries – a clear indication that Suffolk and MSM intended for the City and the County – not R&Q – to be beneficiaries. *See In re Gov't Complex Case, Consol.,* 543 So. 2d 866, 867 (Fla. 4th DCA 1989) (holding that the designation of some non-parties as third-party beneficiaries acts as an exclusion to all other non-parties). Accordingly, R&Q's Counterclaim must be dismissed.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Fraga Engineers, LLC's Motion to Dismiss Second Amended Complaint or, in the Alternative, for a More Definite Statement [ECF No. 73] is DENIED;

2. Grimshaw Architects, P.C.'s Motion to Dismiss Plaintiffs' 2nd Amended Complaint [ECF No. 74] is DENIED;

3. DDA Engineer's PA's Motion to Dismiss Second Amended Complaint or, in the Alternative, for a More Definite Statement [ECF No. 76] is DENIED;

4. Suffolk Construction Company's Motion to Dismiss Rodriguez and Quiroga Architects Chartered's Counterclaim, or in the Alternative, Motion to Compel Arbitration [ECF No. 116] is GRANTED;

5. Plaintiff Baker Concrete Construction, Inc.'s Motion to Dismiss Count II of Rodriguez and Quiroga Architects Chartered's Counterclaim [ECF No. 117] is GRANTED;

6. Rodriguez and Quiroga Architects Chartered's Motion for Entry of an Order Finding that Rodriguez and Quiroga Architects Chartered is an Intened Third-Party Beneficiary of the Contract [ECF No. 135] and Rodriguez and Quiroga Architects Chartered's Motion for Entry of an Order Finding that Rodriguez and Quiroga Architects Chartered is an Intended Third-Party Beneficiary of the Contract [ECF No. 136] are DENIED.

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of March, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE